FILED
02/24/2023
Molly Bradberry
CLERK
Park County District Court
STATE OF MONTANA
By: Molly Bradberry
DV-34-2023-0000021-GF
Gilbert, Brenda
1.00

Jory C. Ruggiero, Esq.
Maxwell E. Kirchhoff, Esq.
WESTERN JUSTICE ASSOCIATES, PLLC
303 West Mendenhall, Suite 1
Bozeman, Montana 59715
Ph: (406) 587-1900
Fax: (406) 587-1901
jory@westernjusticelaw.com
max@westernjusticelaw.com
info@westernjusticelaw.com

*Attorneys for Plaintiffs*

MONTANA SIXTH JUDICIAL DISTRICT COURT
PARK COUNTY

| BETH SMITH and CLARKE SMITH,<br><br>Plaintiffs,<br><br>vs.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and JOHN DOES 1-5,<br><br>Defendants. | Cause No: DV-34-2023-0000021-GF<br><br>**COMPLAINT**<br><br>and<br><br>**DEMAND FOR JURY TRIAL** |
|---|---|

Plaintiffs Beth Smith and Clarke Smith ("the Smiths") allege as follows in support of their Complaint against Defendant State Farm Mutual Automobile Insurance Company ("State Farm"):

## I.   PARTIES, JURISDICTION AND VENUE

1. The Smiths are citizens and residents of Park County, Montana where the collision at issue in this case occurred and where Defendant has a duty to pay for the Smiths' damages.

2. Defendant State Farm is an insurer authorized to do business in Montana and whose statutory home office is located in Bloomington, Illinois.

3. Defendants John Does 1-5 are other people or entities that may be liable to Plaintiffs for the damages sought in this Complaint and Demand for Jury Trial.

4. This Court has jurisdiction over the subject matters and the parties to this action.

5. Pursuant to § 25-2-122(1)(b), MCA, venue properly lies in the Montana Sixth Judicial District, Park County.

## II.   FACTUAL BACKGROUND

6. On August 1, 2020, Clarke and Beth Smith exited Interstate 90 at Livingston Exit Number 333. The Smiths were stopped behind other cars at the stoplight at the bottom of the interstate off ramp near McDonalds. Moments later, State Farm's insured, Michael Koltonow, exited Interstate 90 on the same off ramp traveling at too high a rate of speed. Mr. Koltonow was unable to stop and rear-ended the Smiths while they were completely stopped. The Smiths suffered significant injuries in the collision. Mrs. Smith's injuries include, but are not limited

to, a head injury, whiplash, neck and back pain, and headaches. Mr. Smith's injuries include, but are not limited to, neck pain, whiplash, and headaches.

7. State Farm's insured, Mr. Koltonow, was solely responsible for the collision.

8. Due to this collision, and as a result of their injuries, the Smiths have incurred medical expenses, lost income, suffered physical pain and discomfort, mental anguish, a loss of established lifestyle, loss of consortium and other damages. The Plaintiffs' damages are continuing.

9. The Smiths and their treating medical providers submitted their medical bills to State Farm for payment.

10. At the time of the collision, Mrs. Smith worked in food service for the Livingston School District, which was a physically demanding occupation. Her job required heavy lifting, repetitive movements and looking down for extended periods of time, which exacerbated Mrs. Smith's injuries. Due to Mrs. Smith's injuries, Mrs. Smith's medical providers placed her on work restrictions. As a result, Mrs. Smith incurred lost wages.

11. On or about October 6, 2020, Mrs. Smith submitted her lost wages to State Farm for reimbursement.

12. On October 12, 2020, State Farm requested additional information concerning Mrs. Smith's lost wages.

13. Mrs. Smith provided the additional lost wage information to State Farm on October 26, 2020.

14. On November 20, 2020, State Farm requested more information concerning Mrs. Smith's lost wage claim again from Mrs. Smith's primary care provider, Hannah Dupea, M.D., and Mrs. Smith's employer.

15. On December 2, 2020, Mrs. Smith's employer provided the requested information to State Farm concerning Mrs. Smith's lost wages.

16. On December 4, 2020, Mrs. Smith returned to Dr. Dupea due to her injuries arising out of the collision. Dr. Dupea noted that Mrs. Smith was stressed due to her neck pain, work and insurance issues. State Farm still had not reimbursed Mrs. Smith for her lost income. Dr. Dupea referred Mrs. Smith to a pain specialist, Bradley Aylor, M.D.

17. On December 10, 2020, Mrs. Smith sought evaluation and treatment recommendations from Dr. Aylor. Dr. Aylor specifically states that he "would relate all of the treatment she has received so far as well as the treatment that we will proceed on with to the motor vehicle accident."

18. On or about December 22, 2020, Mrs. Smith provided State Farm with Dr. Dupea's letter concerning Mrs. Smith's work restrictions and lost wages.

19. Sometime shortly thereafter, Williams Law Firm, P.C. ("Williams") wrote to Mrs. Smith in a letter dated December 16, 2020, that they had been retained

by State Farm to assist in evaluating her bodily injury claim. Williams informed Mrs. Smith that in order to "consider additional requests for the advanced payment of any additional treatment and claimed lost wages," they were requesting 10 years of her prior medical records. Williams also wrote that they may like "to consult with an independent medical examiner regarding this matter." Mrs. Smith provided Williams its requested complete medical authorization.

20. The medical bills and records State Farm received demonstrate that the medical treatment Mrs. Smith sought was necessitated by the injuries she incurred in the collision caused by State Farm's insured.

21. Mrs. Smith's work restrictions placed by her medical providers, and her lost wages incurred as a result thereof, were also clearly caused by the collision.

22. On or about February 8, 2021, Williams retained mechanical engineer, Bradley Probst, to conduct a biomechanical paper review.

23. In late February 2021, Mrs. Smith followed up with State Farm concerning her medical expenses and lost wages which State Farm still had not paid.

24. Williams wrote to Mrs. Smith on March 5, 2021, acknowledging her inquiries with State Farm and stating that Williams was still in the process of reviewing her prior medical records and the circumstances of the collision, including from a biomechanical standpoint.

25. Mrs. Smith continued to seek necessary treatment for her injuries arising

out of the collision.

26. On April 12, 2021, Williams wrote to Mrs. Smith stating that State Farm was unable to provide further advance payments since it was not reasonably clear that the collision and claimed expenses were causally related to the collision. This was based on a paper review biomechanical report performed by Bradley Probst, with ARCCA Incorporated. Williams included Mr. Probst report with its letter. Mr. Probst essentially looked at photos of the vehicles and rendered an opinion that the forces generated in the collision could not have hurt the Smiths.

27. State Farm used Mr. Probst's unfounded opinions, which they paid him to render, to deny all further payments for Mrs. Smith's medical expenses and lost wages. In fact, State Farm quit paying Mrs. Smith's medical bills in the beginning of December 2020 and never reimbursed her for any of her lost wages.

28. It was strictly improper for State Farm to use a mechanical engineer to render a paper review medical causation opinion and to use such opinion as the basis to refuse its obligation to pay the Smith's medical bills and lost wages.

29. The Smiths were emotionally distraught to learn that there was a law firm essentially calling them liars and hiring unqualified "experts" to deny payment of the lost wages and medical bills that the Smiths needed to have paid. The Smiths were also distraught to be accumulating financial debt as a result of State Farm's decision to deny payment of Beth's lost wages and medical bills.

30. On October 12, 2022, eighteen months after State Farm used Bradley Probst's paper biomechanical review to deny medical causation and after the Smiths had been forced to file suit, State Farm hired Donald Ericksen, M.D., to provide a paper record medical review. Dr. Ericksen opined that "On a more probable than not basis, Beth Smith sustained a cervical region soft tissue strain or whiplash-type injury." This directly contradicted State Farm's prior paper review performed by Mr. Probst wherein Mr. Probst opined that the forces from the collision could not have injured the Smiths.

31. Dr. Ericksen further opined that Mrs. Smith's initial treatment in the emergency room, treatment over the next three months and Dr. Aylor's evaluation on December 10, 2020, were reasonable and causally related to the collision. Dr. Ericksen went on to explain that it was reasonable to anticipate three to four weeks of vocational restrictions for Mrs. Smith.

32. Dr. Ericksen rendered an opinion that, starting three months after the collision, all of Mrs. Smith's injuries were solely the result of previously asymptomatic degenerative changes in Mrs. Smith's spine. Dr. Ericksen based this opinion on a deliberate and audacious mischaracterization of the medical records by Mrs. Smith's treating doctor, Dr. Aylor.

33. Dr. Ericksen's mischaracterization and misquotation of Dr. Aylor was obvious to State Farm and Williams. Nevertheless, State Farm continued to rely

upon Dr. Ericksen's opinions to deny payment of Mrs. Smith's medical bills and lost wages.

34. Williams and State Farm acted in concert in adjusting the Smiths' claims. Williams has acted as an insurance adjuster for State Farm and as State Farm's agent. Williams is doing the actual insurance adjusting, including making medical causation judgments and determining whether to pay specific medical bills. State Farm is responsible for the acts of its agent, Williams.

35. State Farm knew that it is illegal for an insurer to withhold payment of third-party claimants' medical expenses and lost wages in a clear liability collision without a proper factual basis. State Farm never disputed the liability of their insured for causing the collision.

36. After State Farm began wrongfully refusing to pay the Smiths' medical bills and lost wages, State Farm made numerous efforts to close the Smiths' claims or force the Smiths to settle for less than their claims were worth.

37. State Farm knew that it is illegal for an insurer to withhold payment of third-party claimants' medical expenses and lost wages in a clear liability collision in an attempt to leverage collision victims into accepting an unfair resolution of a third-party insurance claim.

38. Nevertheless, State Farm is deliberately and with malice refusing to forward payment pursuant to § 33-18-201(6) and (13), MCA; *Ridley v. Guaranty*

*National Ins. Co.* (1997), 286 Mont. 325, 951 P2d 987; *DuBray v. Farmers Insurance Exchange*, 2001 MT 251, 307 Mont. 134, 36 P.3d 897 and T*eeter v. Mid-Century Ins. Co.*, 2017 MT 292, 389 Mont. 407, 406 P.3d 464. State Farm's deliberate acts cause serious financial, psychological, and physiological harm to the Smiths.

### III.   CLAIMS FOR RELIEF

### COUNT ONE – BREACH OF THE COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

39. All allegations asserted in this Complaint are incorporated herein by reference.

40. State Farm had a duty of good faith and fair dealing toward the Smiths.

41. State Farm breached its duty of good faith and fair dealing by refusing to pay for Mrs. Smith's necessary medical treatment and lost wages, without a proper medical causation opinion. State Farm's conduct constitutes a pattern and a business practice.

42. State Farm breached its duty of good faith and fair dealing when it used its factually unfounded denial of the Smiths' bills in an attempt to leverage the Smiths into ending their claim or accepting an unfair resolution of the auto collision they did not cause. State Farm's conduct constitutes a pattern and a business practice.

43. State Farm breached its duty of good faith and fair dealing by relying on

an unqualified mechanical engineer, Mr. Probst, to deny medical causation of Mrs. Smith's injuries. State Farm's conduct constitutes a pattern and a business practice.

44. State Farm breached its duty of good faith and fair dealing by failing to reimburse Mrs. Smith's medical bills and lost wages from the first three months following the collision, even after State Farm received additional information from Dr. Ericksen confirming that Mrs. Smith was in fact injured from the collision during that time. State Farm's conduct constitutes a pattern and a business practice.

45. State Farm breached its duty of good faith and fair dealing by relying on Dr. Ericksen's obvious mischaracterization and misquotation of Mrs. Smith's treating doctor, Dr. Aylor, as a basis for denying payment of Mrs. Smith's lost wages and medical expenses. State Farm's conduct constitutes a pattern and a business practice.

46. State Farm further breached its duty of good faith and fair dealing to make good faith offers to settle the Smiths' claims. State Farm's conduct constitutes a pattern and a business practice.

47. State Farm's breach of its duty of good faith and fair dealing toward the Smiths caused the Smiths significant damage, including but not limited to physical manifestations of stress, slowed healing, loss of use of money, emotional distress, frustration, vexation, inconvenience, attorney fees, and litigation costs.

48. State Farm's breach of its duty of good faith and faith dealing toward the Smiths constitutes common law insurance bad faith. The Montana Supreme

Court has made clear that third-party actions for common law bad faith are not prohibited under § 33-18-242, MCA. *Brewington v. Employers Fire Ins. Co.,* 1999 MT 312, 114, 297 Mont. 243, 999 P.2d 237.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1. An award for compensatory damages for State Farm's bad faith;
2. For punitive damages;
3. For prejudgment interest as permitted by law;
4. For attorney fees and costs; and
5. For such other and further relief as is deemed just and equitable by this Court.

Plaintiffs demand a twelve-person jury trial on all issues so triable.

DATED this 24th day of February, 2023.

        WESTERN JUSTICE ASSOCIATES, PLLC

        */s/ Jory C. Ruggiero*
        JORY C. RUGGIERO, ESQ.
        303 W. Mendenhall, Suite 1
        Bozeman, Montana 59715
        *Attorney for Plaintiffs*